UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS K.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 2:24-cv-3494

Graham, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Thomas K., who previously had been determined to be a disabled individual, filed this Social Security appeal in order to challenge the Defendant's finding that his disability has ended. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents a single claim of error. For the reasons explained below, the Commissioner's decision should be AFFIRMED.

**I. Summary of Administrative Record**

On February 7, 2019 when he was 30 years old, Plaintiff was awarded disability insurance benefits ("DIB") based on a combination of severe impairments including diabetes, poliomyelitis with left foot drop, chronic cellulitis of the right leg, and Hashimoto's disease. (Tr. 379; *see also generally* Tr. 374-382.) The decision was retroactive to Plaintiff's alleged onset of disability date, October 28, 2016, when Plaintiff was 27 years

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

1

old. (*Id.*) The February 7, 2019 decision is known as the "comparison point decision" ("CPD"). (Tr. 237.)

The ALJ who authored the CPD rejected the opinions of state agency medical consultants who opined that Plaintiff would still be able to work at the light exertional level with postural limitations. In so doing, the ALJ relied heavily on a lengthy October 2016 hospital admission for serious complications associated with Plaintiff's diabetes, his polio history, and a cellulitis infection that had worsened in his right leg. While hospitalized, he became septic and experienced acute kidney and renal failure. (Tr. 379). The ALJ also cited a January 2017 hospitalization which was based on similar complications including cellulitis in his right leg, accompanied by acute renal failure as well as severe hypotension and hyperkalemia. (*Id.*) ALJ Patricia S. McKay determined Plaintiff would need to elevate his legs for 15 minutes every hour. (Tr. 380.) However, the CPD also stated that "[m]*edical improvement is expected with appropriate treatment,*" and recommended a "continuing disability review in 36 months." (Tr. 381, emphasis added.)

Just over three years later in May 2022, the Social Security Administration conducted a "continuing disability review" and terminated Plaintiff's benefits. (Tr. 357-73.) In the 2022 decision, a state agency hearing officer determined that Plaintiff could perform work at the medium exertional level due to medical improvement. (Tr. 479-487.) The decision was upheld on reconsideration and Plaintiff requested a new evidentiary hearing before an ALJ. On May 24, 2023, ALJ Lesperance convened a telephonic hearing at which Plaintiff and an impartial vocational expert both testified. On July 17, 2023, ALJ Lesperance issued a written decision in which she determined that Plaintiff was no longer disabled. (Tr. 235-247.)

Plaintiff was 33 years of age on the cessation date, May 10, 2022. At the evidentiary hearing, Plaintiff testified that he resides with his son, his girlfriend and her daughters, ages six and ten. (Tr. 259.) He has a high school education, with past relevant work as a sales representative, an office helper, a retail salesperson, a fast food lead worker, a material handler, a sewing machine operator, and a warehouse worker. (Tr. 245.) Plaintiff worked part-time throughout his closed disability period, 2016 through 2022, but his earnings did not exceed substantial gainful activity. (Tr. 237.)

In her 2023 decision, ALJ Lesperance determined that as of May 10, 2022, Plaintiff's list of medically determinable impairments included "diabetes mellitus type I, poliomyelitis with left foot drop status post left Achilles' repair and leg length discrepancy; right Achille's tendonitis; mild degenerative joint disease bilateral knees with a loose body in the right knee, considered severe in combination with other issues." (Tr. 237.) No impairments, alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.)

In comparing Plaintiff's 2022 impairments with the list of impairments determined to be severe in 2019, ALJ Lesperance noted three areas of medical improvement. First, the ALJ found that Plaintiff's Hashimoto's disease was no longer "severe." Next, she determined that Plaintiff's diabetic symptoms were much improved. Third, the ALJ discussed a "primary" area of improvement concerning Plaintiff's right leg.

> [T]he claimant no longer experiences significant or persistent cellulitis in the right leg. The grant of disability at the CPD by the prior ALJ was based on the need to elevate the legs 15 minutes every hour due to chronic infections in the right leg with cellulitis causing "extreme pain." However, in the current period, the record does not demonstrate any recurrent or chronic infection in the right leg, or significant cellulitis or swelling, or other basis to require frequent breaks or elevation.

(Tr. 237-238.)

Based on her findings of medical improvement, ALJ Lesperance eliminated the Residual Functional Capacity ("RFC") limitation that required "15 minute breaks every hour to elevate his legs." (Tr. 379.) Instead, the ALJ found:

> Since May 10, 2022, the impairments present at the time of the CPD decreased in medical severity to the point where the claimant has had the residual functional capacity to perform a range of work between sedentary and light. He can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently. He can stand/walk 2 hours in an 8-hour workday but sit without limitation. He can occasionally climb ramps and stairs, crouch, crawl, and stoop. He is unable to climb ladders, ropes, or scaffolds or work around hazards such as unprotected heights or work in proximity, moving mechanical parts, and cannot engage in occupational driving.

(Tr. 239-240.)

Based upon Plaintiff's age, education, and RFC, and considering testimony from the vocational expert, the ALJ determined that Plaintiff still could not perform any of his past relevant work. (Tr. 245.) Nevertheless, she found that he could perform a significant number of unskilled sedentary jobs in the national economy, including the representative positions of order clerk, document preparer, and change account clerk. (Tr. 246.) Therefore, the ALJ determined that Plaintiff was no longer under a disability beginning on May 10, 2022 through the date of her July 17, 2023 decision. (Tr. 247.)

The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner. In this judicial appeal, Plaintiff broadly argues that the ALJ's determination that his medical improvement resulted in the cessation of disability as of May 10, 2022 is not supported by substantial evidence.

4

## II. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. § 1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See id.; see also Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

5

When the Social Security Agency conducts a continuing disability review for DIB, it is guided by an eight-step sequential analysis. *See* 20 C.F.R. § 404.1594. Unlike the five-step analysis used to determine initial disability, the primary focus for a continuing review is on whether there has been medical improvement related to an individual's ability to perform work.

> At step one in Title II claims, the ALJ examines whether the individual is engaging in substantial gainful activity. If the answer is yes, the individual's disability has ended. Step two is an examination of whether the individual had an impairment or combination of impairments which meets or equals the severity of a listed impairment. If the answer is yes, disability continues. Step three is an inquiry as to whether there had been medical improvement. Step four is an examination whether the medical improvement is related to the individual's ability to perform work. Step five is an analysis conducted if there has been no medical improvement or the medical improvement is not related to the individual's ability to perform work. Step six is a determination whether the individual's current impairments are severe. If there is no severe impairment, the individual is not disabled. Step seven is an assessment of the claimant's "ability to do substantial gainful activity" in accordance with 20 C.F.R. § 404.1560. That is, the ALJ determines the individual's residual functional capacity (RFC) based on all his current impairments and considers whether he can perform past relevant work. If he can perform such work, he is not disabled. Step eight is an administrative finding whether the individual can perform other work in light of his age, education, work experience and RFC. If he is capable of performing other work, he is not disabled. 20 C.F.R. §§ 404.1594(f), 416.994(f); *see Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 307-08 (3d Cir. 2012); *Delph v. Astrue*, 538 F.3d 940, 945–46 (8th Cir. 2008).

*Valencia v. Commissioner of Social Security*, 216 F.Supp.3d 835, 837 (W.D. Mich. 2016).

"There is no presumption of continuing disability." *See Kennedy v. Astrue*, 247 Fed. Appx. 761, 764 (6th Cir. 2007) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 n.1 (6th Cir. 1994)). At the same time, "[i]t is the Commissioner's ultimate burden of proof to establish that the severity of a claimant's impairment has medically improved, and that the claimant is now able to perform substantial gainful activity." *Couch*

*v. Comm'r of Soc. Sec.*, No. 1:11-cv-174-SSB-KLL, 2012 WL 930864, at *3 (S.D. Ohio Mar. 19, 2012); *see also Kennedy*, *supra*, 247 Fed. Appx. at 765.

### III. Analysis

#### A. Plaintiff's Limited Challenge to Medical Improvement Findings

Under the regulations, medical improvement is defined as "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable …decision that [they] were disabled or continued to be disabled." 20 C.F.R. §404.1594(b)(1). An ALJ's determination that there has been a decrease in the medical severity of a claimant's impairments "must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [their] impairment(s)." *Id.*

Plaintiff does not dispute that symptoms of his Hashimoto's disease decreased in medical severity to the point that they no longer impact his ability to work. (Tr. 239-240.) Plaintiff also does not contest the ALJ's explanation for finding that symptoms from his Type I diabetes have significantly decreased. (*See* Tr. 238, 241.) The ALJ's determination that Plaintiff has experienced medical improvement therefore is substantially supported.

However, Plaintiff disputes the extent of the ALJ's findings of medical improvement with respect to his legs – specifically, whether – after May 10, 2022 - he still needs to elevate his legs 15 minutes out of every hour to alleviate pain and swelling. Plaintiff maintains that his pain and swelling have not improved or, alternatively, have improved only slightly because of his compliance with his treating physician's advice to elevate his legs. He argues that the ALJ's analysis is not supported by substantial evidence. To challenge the elimination of the leg-elevation limitation, Plaintiff specifically attacks the

ALJ's analysis of: (1) clinical records; (2) the opinions of his treating physician; and (3) Plaintiff's testimony.

### A.  The ALJ's Analysis of Relevant Medical Records

The ALJ reasoned that the 2019 RFC requirement of leg elevation was based on Plaintiff's chronic cellulitis infections and pain that allegedly resulted from that condition. But by May 10, 2022, the ALJ found evidence of significant improvement in both the number and severity of cellulitis infections and in Plaintiff's reported pain level compared to what the record showed prior to May 10, 2022. The ALJ noted that although Plaintiff continues to allege right leg cellulitis "there are no objective signs or findings to support this since the cessation date" of May 10, 2022. (Tr. 240.)

Plaintiff does not dispute that he experienced significant medical improvement in the number and severity of cellulitis infections in his right leg. (*See* Tr. 242, "no evidence of active cellulitis in that leg since the cessation date.") Nor does he dispute the multiple clinical examination records cited by the ALJ in which Plaintiff had minimal to no swelling and no pain relating to any type of infection including cellulitis during the relevant period. For example, the ALJ cited four endocrinology visits where he was observed to "walk without difficulty" with no rashes or pedal edema, a podiatry visit where he was noted to have normal gait and range of motion with no swelling and an emergency department visit for COVID. (*See* Tr. 242, citing numerous records including Tr. 1288, 1388). In addition, the ALJ discussed a clinical record from a visit for acute right ankle pain at which an exam showed no edema and no infection. (Tr. 1413.) As the ALJ pointed out, the examining physician stated: "Patient appears to have a misconception about a chronic septic infection that he holds in his leg. He is very concerned about recurrent sepsis with

8

his history of diabetes and cellulitis. Advised that I saw no current signs of infection." (Tr. 242, quoting Tr. 1413.)

The ALJ also cited to other records of normal exam findings "with only occasional swelling over the right Achilles tendon relating to Achilles' tendonitis as opposed to a recurrent infection or the sepsis as he had experienced in 2016-2017." (Tr. 242.) Finally, the ALJ cited to several notes authored by Plaintiff's treating physician, Dr. Vargo, as well as to an orthopedic follow up exam. (*See* Tr. 1425, 1431, 1433-1435, 1442.) In short, the ALJ reasonably and accurately summarized Plaintiff's clinical records after May 10, 2022 as a "stark contrast to the prior period, wherein the claimant was repeatedly hospitalized with a septic right leg and requiring long term antibiotics." (Tr. 242) The undersigned finds no mischaracterization of the relevant records, all of which substantially support the ALJ's analysis.

Still, Plaintiff faults the ALJ's alleged failure to adequately consider records concerning his *left* leg. In addition to his left leg being 4 inches shorter than his right, Plaintiff suffers from a drop and/or club left foot, due in part to having contracted polio at age 2. The ALJ agreed that Plaintiff had no medical improvement in his left leg and foot. But the ALJ pointed out that Plaintiff's left leg was a "congenital condition and has remained the same throughout the claimant's life, including earlier periods when he was able to work at SGA levels" (Tr. 242). The ALJ's reasoning as to why Plaintiff's left lower limb does not require leg elevation is both reasonable and substantially supported..

**B. The ALJ's Rejection of the Opinions of Plaintiff's Treating Physician**

The ALJ considered three medical opinions: two by state agency reviewing physicians and a third set by Plaintiff's treating physician, Ronald Vargo, D.O. Despite

9

rejecting agency physician opinions that Plaintiff can perform work at the medium exertional level, (see Tr. 353, 363), the ALJ gave their opinions "partial weight" overall, calling out their leg-elevation opinions and analysis of the evidence concerning the lack of recent infection in Plaintiff's right leg as "well supported." (Tr. 244.) In contrast, the ALJ gave "little weight" to three sets of opinions offered by Dr. Vargo on November 1, 2022, December 28, 2022 and May 22, 2023. (Tr. 244-255.)

Plaintiff argues that the failure to credit Dr. Vargo's opinions was error. Pursuant to regulations that apply to this case,[2] a treating physician opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ is required to articulate "good reasons" for that decision. *Id.* Here, ALJ Lesperance explained that Dr. Vargo's opinions were not well-supported and were inconsistent with other substantial evidence in the record.

Dr. Vargo's first opinion, dated November 1, 2022, was a one-page letter that lists Plaintiff's historical symptoms and diagnoses and concludes: "Thomas is disabled and his diagnoses are permanent." (Tr. 1367.) The ALJ appropriately rejected the letter because "it addresses only a list of symptoms and impairments and then shares a conclusion on a reserved matter without specific functional limitations." (Tr. 244.)

On December 28, 2022, Dr. Vargo completed a physical residual functional capacity ("RFC") form in which he opines that Plaintiff can only occasionally lift and/or

---

[2]Plaintiff filed his original DIB application in 2016. Although numerous regulations were substantially revised for applications filed on or after March 27, 2017, Plaintiff's case is controlled by the regulatory framework in effect prior to those revisions. (Tr. 244)

10

carry weight of up to 10 pounds no more than once an hour. (Tr. 1369.) He further opines that Plaintiff can stand or walk less than 2 hours in an 8-hour workday. (*Id*.) Citing Plaintiff's left leg atrophy and club foot, Dr. Vargo predicts that Plaintiff's "disability relating to left leg will increase" over time. (Tr. 1373.) He states that as a result of Plaintiff's 2016 hospitalization for a staph infection in his right leg, Plaintiff continues to experience "pain in leg, swelling especially [with] prolonged standing he has mitigated by elevating leg 15 min. each hour." (*Id*.) He opines that Plaintiff must continue that regimen, (Tr. 1369), and concludes that it is: "unlikely [over] time" that Plaintiff can work in a job that requires him to be on his feet "for any prolonged period of time." (Tr. 1375) In support, Plaintiff cites to a corresponding clinical record dated December 29, 2022. The referenced record reflects Dr. Vargo's review of Plaintiff's disability paperwork and includes among "current concerns" Plaintiff's subjective report that he "has had residual effects where he will get swelling in his right leg when he is on it for more than an hour," and "will get off it [and elevate] for 15 minutes and then is able to get back on it." (Tr. 1435.)

The ALJ's analysis of Dr. Vargo's[3] RFC opinions easily satisfies the regulatory standard by detailing the multiple ways in which Dr. Vargo's opinions were not well-supported and were inconsistent with other evidence, and why they ultimately were entitled to "little weight."

> The attached form indicates "less than sedentary" abilities which would preclude work. These selections are likewise given little weight. First, they are either not supported with explanation or evidence or, to the extent that he indicates some support, the support is inconsistent with the record. For example, he indicates that the claimant's right leg swells from staph infection, but there is no evidence of infection since the cessation date, and even Dr. Vargo says as much, as noted above. Second, he indicates that

---

[3]While it does not impact the analysis, the ALJ frequently misspells Dr. Vargo's surname as "Vargus."

11

> the claimant's left leg "does not move due to polio"; however, we have no physical examinations showing paralysis in the left leg, and Dr. [Vargo] found him to be a low fall risk (B14F/13). At the same visit, Dr. [Vargo] indicated that no interventions were needed regarding falls, activities of daily living, or home safety (Id.). Dr. [Vargo] asserts weakness on the left but does not perform strength testing at exams; at the emergency department the claimant was found to have 5/5 motor in all four extremities (B12F/2-3). His podiatrist also found normal strength and range of motion in the extremities and normal strength, foot/ankle movement, and range of motion bilaterally (B4F/1; B10F/1). Dr. [Vargo] leaves many portions of the form blank where he was instructed to explain his selections. He also endorses limits for which our record supports no severe medically determinable impairment, such as visual limits. He endorses environmental limits but does not explain why and, although sensitivity to cold, for example, could theoretically arise from the claimant's endocrine disorders, the claimant consistently denies this when seen for treatment. In sum, while we are not required to evaluate opinions line by line, I find that Dr. [Vargo's] opinions are not well supported on the form or in his own treatment notes, nor are they fully consistent with the collateral record, as discussed throughout this opinion.

(Tr. 244-245.)

The ALJ further addressed Dr. Vargo's opinion that Plaintiff should elevate his legs for 15 minutes out of every hour, consistent with the 2019 RFC finding that resulted in Plaintiff's original DIB award. In addition to referring back to her analysis of the substantial contrary medical evidence of record, the ALJ explained: "Dr. [Vargo] relies … on the claimant's subjective reports that his [leg elevation] relieves pain in the right leg from his history of staph infection and swelling, but the record since the cessation date does not support either recurrent infection or swelling." (Tr. 245.) The undersigned finds no error because the ALJ's analysis is both well-articulated and supported by substantial evidence.

### C. The ALJ's Credibility/Consistency Analysis

In a final challenge to the ALJ's analysis of the medical improvement issue with respect to elevating his legs, Plaintiff relies heavily on his own subjective reports. Plaintiff

12

maintains that his "trips to the ER and his physician have decreased because he has been following doctor's orders and elevating the leg to keep the swelling under better control." (Doc. 10, PageID 1505.)

The ALJ began her analysis of Plaintiff's subjective symptoms by summarizing his testimony.

> At the hearing, the claimant testified that he is unable to work due to his impairments. He testified his right leg swells and is painful after being on his feet for more than an hour. He further testified that he walks on his left toes because of the length difference, that his left leg is "like a cane," and he must bear most of his weight on the right leg. He testified that while he was able to work part time 5 hours shifts at a gas station during the period of disability, he quit the job in 2022 due to frequent absences, though he was allowed to use a stool when the gas station was not busy. He testified that he rests most of the time and does some daily activities such as cleaning, preparing food, and childcare, but only to his ability and with breaks. (Hearing testimony).

(Tr. 241.)

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the objective medical and other evidence" in the record. (Tr. 242-243). The ALJ offered a fairly extensive explanation for that adverse credibility determination, reasoning in part

> I note that while the explanation in the comparison point decision appears to focus on the infections in the right leg, the conclusion is that "extreme pain" in both legs required bilateral elevation. I find medical improvement with respect to both. First, I note that the record does not support either "extreme pain" or even consistent significant pain in the left foot or right leg. At his podiatrist visit he denied any current pain in either foot (B10F/1). Likewise, his physical exams at the endocrinologist and primary care are normal in this regard, without evidence of any acute distress. Therefore, although the status of his left foot remains the same, the degree of his reported pain has improved since the prior ALJ decision, based on the claimant's own statements in the record.

(Tr. 242.)  The ALJ reviewed other inconsistencies as well.

13

> His statements that his health is worse and not improved are not consistent with the record. First, the objective evidence is inconsistent with his statements. The record has many physical examinations, particularly with endocrinology, to a lesser extent with primary care, as well as a detailed podiatric and orthopedic exam. These do not support the degree of severity that he alleges. Imaging of the right knee and ankle showed only mild/minor abnormalities. Compared to the CPD, when he had longstanding active cellulitis in the right leg and required multiple hospitalizations and long-term antibiotics, as well as required emergency care related to hypoglycemia (see 1F-7F), no such acute episodes are recorded in the current period. His Hashimoto's and Addison's appear generally controlled and consistently asymptomatic with medication management, per his own symptom reports to endocrinology. The claimant's own statements therefore are not entirely internally consistent, as he did not consistently report to his providers the degree of limitation he reported in connection with his disability case. His physical examination findings are also predominantly normal, as is his cognition. His weight and A1cs are largely stable. Regarding treatment, it has been conservative, consisting of medication management primarily, with some stretching advised related to his orthopedic conditions. He complained of persistent swelling with the need to elevate his legs, but the record contains very little evidence of any swelling or edema, and no evidence of recurrent infectious process in either leg. Regarding medications, these appear to help his conditions, and he does not complain of significant side effects. Regarding precipitating and aggravating factors, his subjective reports of worse pain when standing and walking were considered in adopting a limit to 2 hours.

(Tr. 243.)

In rejecting Plaintiff's report that he needs to frequently[4] elevate his legs, the ALJ concluded:

> As found by the state agency, there is no significant evidence of chronic swelling, edema, circulatory problem, or other basis to require this. …. Because I do not find elevation of the legs to be supported by a preponderance of evidence in the current record, the need for extra breaks related to this activity was not adopted. Regardless, the claimant's allegations are not consistent with the medical evidence of record, which support less limitations.

---

[4]During the continuing disability review before the hearing officer, Plaintiff testified that "on average, he will elevate his legs 3-4 times a week." (Tr. 467, 480.) He also reported hobbies that include gardening and riding motorcycles. (Id.?) Because the ALJ did not discuss or rely on such additional inconsistencies in Plaintiff's subjective reports, however, such evidence would be relevant only if a reviewing court were to reach a harmless-error analysis.

14

(Tr. 243-244.)

A reversal of the Commissioner's decision based upon error in a credibility/consistency determination requires a particularly strong showing by a plaintiff. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference…." ); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Therefore, a credibility/consistency determination cannot be disturbed "absent compelling reasons." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). It is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Under SSR 16-3p,[5] the ALJ's credibility/consistency determination is substantially supported.

### III. Conclusion and Recommendation

Because the Defendant's decision is supported by substantial evidence in the record as a whole, **IT IS RECOMMENDED THAT** the Defendant's decision be **AFFIRMED** and that the above-captioned case be **CLOSED.**

    *s/Stephanie K. Bowman*
    Stephanie K. Bowman
    United States Chief Magistrate Judge

---

[5] The ALJ's assessment, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). Apart from the semantic changes, the essence of the framework remains unchanged.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| THOMAS K., | Case No. 2:24-cv-3494 |
| Plaintiff, | Graham, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Under Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).